FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 03, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALICIA M., | No.1:18-CV-03139-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney D. James Tree represents Alicia M (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income on July 21, 2011, alleging disability since February 1, 2010, due to fibromyalgia. Tr. 70. The application was denied initially and upon reconsideration. Tr. 97-100, 106-11. Administrative Law Judge (ALJ) Ilene Sloan held a hearing on November 20,

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

2013, Tr. 38-68, and issued an unfavorable decision on December 19, 2013, Tr. 19-33. The Appeals Council denied Plaintiff's request for review on June 12, 2015. Tr. 1-6. Plaintiff filed a civil action in this court, and the claim was remanded on July 20, 2016. Tr. 689-703.

The Appeals Council remanded the claim for a second hearing. Tr. 708-11. The remand hearing was held on October 23, 2017, before ALJ Sloan. Tr. 586-620. At the hearing, Plaintiff amended her alleged onset date to the date the claim was filed, July 21, 2011, and requested a closed period of disability, ending March 31, 2016. Tr. 590. On May 7, 2018, Judge Sloan issued a second unfavorable decision. Tr. 522-39. The Appeals Council did not review the decision, and the ALJ's May 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 30, 2018. ECF No. 1, 4.

## STATEMENT OF FACTS

Plaintiff was born in 1986 and was 24 years old as of her alleged onset date. Tr. 637. She completed her GED, but no further education. Tr. 44, 201. Her work history consisted of in-home caregiving, and several short-term jobs, including telemarketer, fry cook, and office assistant. Tr. 46, 202, 610. She initially filed her application for benefits based on the impact of fibromyalgia. Tr. 201. She later developed migraines that she testified were debilitating in their intensity and frequency. Tr. 47, 606-07. In early 2016, she began taking a medication that reduced her stress levels and headaches, and she was able to return to substantial gainful activity providing care to her grandmother. Tr. 592-94.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*,

201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs which exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94

(9th Cir. 2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On May 7, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from July 21, 2011, the alleged onset date, through the end of the requested closed period, March 31, 2016. Tr. 525.

At step two, the ALJ determined Plaintiff had the following severe impairment: obesity, cervical spine disorder, headaches, borderline personality disorder, posttraumatic stress disorder, bipolar disorder, depressive disorder, and pain disorder associated with both psychological and medical conditions. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 526.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform light exertion level work with the following additional limitations:

> she could only occasionally climb ladders, ropes, or scaffolds. She could frequently climb ramps and stairs, and could frequently stoop, kneel, crouch, and crawl. She had to avoid concentrated exposure to vibration and hazards. She needed a work environment characterized as very quiet or moderate, as those terms are defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles. She could understand, remember, and carry out simple instructions. She could have occasional, brief, superficial contact with the general public, coworkers, and supervisors. She could adapt to predicable [sic] work changes.

Tr. 528.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a nurse's aide. Tr. 538.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, including the jobs of cleaner, housekeeping; packing line worker; and mail clerk. Tr. 538-39.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 21, 2011, the alleged onset date, through the end of the requested closed period, March 31, 2016. Tr. 539.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) improperly rejecting Plaintiff's symptom statements; and (2) improperly rejecting medical opinion evidence.

## DISCUSSION[1]

**1. Plaintiff's symptom statements**

Plaintiff alleges the ALJ failed to make clear and convincing findings to support the rejection of her subjective symptom reports. ECF No. 13 at 10-16.

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, she found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are generally not consistent with the medical evidence and other evidence." Tr. 530. Specifically, the ALJ found that (1) Plaintiff's allegations were largely inconsistent with the medical evidence, both physical and psychiatric; (2) the record contained evidence of symptom exaggeration; (3) Plaintiff made inconsistent and changeable statements regarding her symptoms and limitations; (4) Plaintiff's symptom and limitation allegations were inconsistent with her activities; and (5) various other factors undermined the reliability of her reports, including Plaintiff offering varying explanations for stopping working, and evidence that she stopped working in order to care for her son. Tr. 530-35.[2] The Court finds that, even though not all of the factors relied on by the ALJ were

---

[2] The ALJ also adopted by reference her assessment of Plaintiff's symptom reports from the first unfavorable decision, contained in this record at Tr. 632-35. The reasons offered in the previous decision correspond to the general categories of reasons given in the current decision, and also included Plaintiff's failure to follow treatment recommendations and evidence of her lack of motivation to work.

relevant, the ALJ offered sufficient rationale to meet the clear and convincing standard.

### a. Inconsistency with medical evidence

The ALJ found Plaintiff's allegations to be mostly inconsistent with the medical evidence. Tr. 530-33, 632-33.

An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptom statements. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). But this cannot be the only reason provided by the ALJ. *See Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence); *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ identified numerous instances in the record where Plaintiff's physical presentation was normal, despite allegations of debilitating pain and migraines. Tr. 531. She also noted imaging that revealed no or only mild impairment. *Id.* The ALJ further found Plaintiff's allegations of daily migraines and the inability to travel unaccompanied to be inconsistent with her regular attendance alone at medical appointments, and the fact that she did not regularly cancel appointments due to migraines. *Id.*

With respect to Plaintiff's mental health conditions, the ALJ noted little to no specialized mental health treatment, and, other than a brief exacerbation of her mental health symptoms in 2015, a mostly unremarkable mental presentation at most medical visits. Tr. 532-33.

Finally, by reference to the prior decision, the ALJ found Plaintiff's allegations were inconsistent with multiple medical opinions in the record that indicated she was capable of some level of work activity. Tr. 632-33.

While Plaintiff offers alternative interpretations of the records and other explanations for normal exam findings, ECF No. 13 at 11-13, the ALJ's interpretations are rational and supported by substantial evidence. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### b. Symptom exaggeration

The ALJ next found the record to contain evidence of symptom exaggeration, noting Plaintiff's reports of symptoms to a consultative examiner that did not appear elsewhere in the record, another examining psychologist's observation that Plaintiff's reports were "of questionable veracity," and Plaintiff's general assertion that she spent nearly 24 hours a day in bed during the relevant period. Tr. 533.

While an ALJ is not to evaluate a claimant's "overall character for truthfulness," Social Security Ruling 16-3p, evidence suggestive of symptom exaggeration is relevant evidence the ALJ may rely on in evaluating the reliability of a claimant's subjective symptom reports. *Cassel v. Berryhill*, 706 Fed. Appx. 430 (9th Cir. 2017) (finding no error with ALJ's reliance on, among other factors, claimant's tendency to overstate his difficulties). The ALJ's interpretation of the evidence is rational. Furthermore, Plaintiff does not challenge this basis for the ALJ's finding regarding the reliability of Plaintiff's symptom reports.

### c. Inconsistent statements

The ALJ found Plaintiff made inconsistent and changeable statements regarding her symptoms and limitations, including various reports regarding the onset of her migraines, her activities with her boyfriend, whether she had engaged in any work activity since the alleged onset date, and the reasons for stopping working. Tr. 533-35. The ALJ also noted in the prior decision that Plaintiff gave varying statements as to whether her medications were effective. Tr. 635.

An ALJ may consider inconsistent statements by a claimant in assessing the reliability of her alleged symptoms and limitations. *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) *citing Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Not all of the incidents discussed by the ALJ in this heading constitute actual inconsistencies that call into question the reliability of Plaintiff's symptom reports. The Court acknowledges that an individual's symptoms can change over the course of many years, and such changes do not necessarily indicate inconsistency. However, the ALJ's identification of some arguably inconsistent statements, such as her activities with her boyfriend and the various reasons explaining why she stopped working, are relevant factors. The ALJ's discussion is a rational interpretation of the evidence, and thus will not be disturbed. Any reliance on improper reasons here is harmless error because the ALJ offered other sufficient clear and convincing reasons for discounting Plaintiff's statements. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"); *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a credibility finding where one of several reasons was unsupported by the record).

**d. Activities**

A claimant's daily activities may support an adverse credibility finding if the claimant's activities contradict her other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ found Plaintiff's allegations of her physical limitations and being nearly bedridden to be inconsistent with her demonstrated activities. Tr. 534. Specifically, the ALJ pointed to Plaintiff's ability to attend medical appointments

alone; her ability in 2011 to shop, visit with friends and family, and care for her son; swimming; building a Lego battleship and selling her friends jewelry; and planning her wedding. *Id.*

The ALJ's interpretation is not supported by substantial evidence and is inconsistent with the advancement of Plaintiff's condition over time. The vast majority of the activities identified by the ALJ are activities Plaintiff was engaged in in 2011 and 2012, over six years prior to the ALJ's decision. Plaintiff's treatment records reflect a progression of her impairments. *See, e.g.*, Tr. 479 (April 2012, headaches are getting worse), 1699 (February 2013, migraines are getting worse with time), 1041 (January 2014, pain and numbness in her legs worsening for past 10 months), 1244 (June 2015, changing and worsening migraines). Notably, Plaintiff gave up custody of her son in 2012 due to her inability to care for him. Tr. 48. While the identified activities are relevant in assessing the reliability of Plaintiff's assertions for that time period, they do not continue to have the same relevance for the years following.

However, any error here is harmless, as the ALJ identified other clear and convincing reasons for discounting Plaintiff's statements. *Tommasetti*, 533 F.3d at 1038.

### e. Other factors

In the 2013 decision (adopted by reference in the 2018 decision) the ALJ identified a number of other factors that she considered in evaluating the reliability of Plaintiff's subjective complaints. These included: (1) Plaintiff's failure to consistently take her medications; (2) her failure to follow recommendations to exercise and lose weight; and (3) some evidence of lack of motivation to work. Tr. 632, 635. Plaintiff did not challenge the ALJ's reliance on these factors. ECF No. 13 at 10-16. The Court finds these are relevant facts for the ALJ to have considered in her assessment.

## 2. Medical Opinion Evidence

Plaintiff contends the ALJ erred by improperly rejecting the opinions of treating doctor Rory Sumners, MD, and ARNP Lori Drews. ECF No. 13 at 17-21.

### a. Dr. Sumners

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons," based on substantial evidence, to reject the opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). A doctor's opinion may also be discounted if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Dr. Rory Sumners, a treating physician, offered multiple opinions on Plaintiff's functional status throughout the pendency of this claim. In April 2013, he completed a questionnaire in which he opined Plaintiff needed to lie down for one to three hours after her frequent headaches and that she would be expected to miss four or more days of work per month, remarking "symptoms are frequently debilitating." Tr. 514-15. In February 2014 Dr. Sumners completed a functional evaluation for the Washington State Department of Social and Health Services (DSHS) and opined Plaintiff was moderately to severely limited in many basic work activities and was thus unable to meet the demands of even sedentary work. Tr. 1714-16. In August 2015 Dr. Sumners completed another evaluation for

DSHS, this time concluding Plaintiff was capable of sedentary exertion work. Tr. 1295-97.

The ALJ gave little weight to each of these opinions, finding them to be unsupported by explanation or contemporaneous evaluations and objective findings, inconsistent with Plaintiff's presentation in the record as a whole, and based largely on Plaintiff's subjective reports, which she found to be unreliable. Tr. 536-38.[3] An ALJ may reject an examining physician's opinion when it is inconsistent with the majority of the objective evidence, *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004), or with his own treatment notes, *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### i. *The 2013 opinion*

Upon remand from this court, the ALJ was required to reassess the 2013 opinion from Dr. Sumners. Tr. 700-01. The ALJ found the opinion did not include a complete evaluation with objective findings and found the opinion inconsistent with Plaintiff's presentation in the record as a whole. Tr. 538. She further noted the opinion appeared to rely heavily on Plaintiff's subjective reports of migraine symptoms. *Id.*

The ALJ is correct that there is no corresponding exam with this opinion, and Dr. Sumners' records up to that point documented no abnormal objective findings, other than some mild tenderness along the trapezius and paraspinal muscles. Tr. 1701, 1708.

---

[3] The ALJ also expressed doubt as to whether the 2013 opinion was indeed signed by Dr. Sumners. The Court finds it unnecessary to resolve this issue, as the ALJ made alternative findings that are specific and legitimate.

1  The ALJ is further correct that the record reflects largely normal findings on objective exams, both from Dr. Sumners and other treating and examining sources. Tr. 1093, 1186-87, 1191, 1230-31, 1236, 1252-53, 1258, 1262, 1270, 1285, 1290, 1312, 1326, 1350, 1375, 1380, 1456-57, 1460, 1464-68, 1438-69, 1472-73, 1494, 1549, 1554-55. Plaintiff asserts the ALJ cited the normal findings in the record while ignoring positive findings that supported the opinion as a whole. ECF No. 13 at 19. However, Plaintiff identified only a few records as objective evidence in support of the opinion, consisting of confirmation of the diagnosis of fibromyalgia, Tr. 263-64, 269, 271, and a DSHS exam form from prior to the alleged onset date confirming a herniated disc at C6-7 (but still allowing for the performance of light to sedentary work), Tr. 356-59. The ALJ's interpretation of the record is supported by substantial evidence.

As to the ALJ's rationale that Dr. Sumners relied heavily on Plaintiff's subjective reports of migraines, the Court finds this rationale to be supported by substantial evidence. At the time Dr. Sumners completed the 2013 opinion, he had only treated Plaintiff a couple of times. Tr. 514, 1699-1709. Plaintiff only mentioned headaches at her second appointment. Tr. 1699. There is no indication that she had been referred to a neurologist at that time,[4] and all neurological exam findings were normal. Tr. 1701. It does not appear on this record that Dr. Sumners would have had any basis to evaluate the functional impact of Plaintiff's headaches other than relying on her subjective reports. As the Court finds the ALJ gave legally sufficient reasons for disregarding Plaintiff's subjective reports, this was a specific and legitimate reason for disregarding Dr. Sumners' 2013 opinion.
///

---

[4] Due to gaps in the treatment record an exact timeline is difficult to construct, but it appears Plaintiff did not see a neurologist on Dr. Sumners' referral until 2015. Tr. 1233, 1242.

### ii. *The 2014 Opinion*

The ALJ noted that Dr. Sumners' reports completed for DSHS did not contain sufficient rationale or objective findings consistent with the assessed limitations. Tr. 536. In response to the DSHS form's direction to list objective findings in support of the opinion, Dr. Sumners stated "see medical records." Tr. 1715. However, the record does not contain treatment records from Dr. Sumners at the time of this report. Furthermore, he indicated treatment recommendations were pending further test results, including MRIs of the lumbar and cervical spine, a neurosurgery referral, and an abdominal CT scan. Tr. 1716. The ALJ's conclusion that this opinion is unsupported by sufficient rationale or objective findings is supported by substantial evidence.

The ALJ also noted that the February 2014 report was accompanied by range of motion findings that were normal, and contemporaneous treatment records that were unremarkable. Tr. 536 (citing Tr. 1041, 1717). Other than five degrees of reduction of range of motion in the extension of the back, Dr. Sumners' exam findings attached to this report were all normal. Tr. 1717. At a January 13, 2014 exam with Dr. Marjorie Henderson, performed shortly before the completion of Dr. Sumners' report, Plaintiff presented with lumbar range of motion within functional limits, normal range of motion in the hips, knees, and ankles, and normal neurological exam with intact sensation and strength. Tr. 1041. The overall exam was essentially normal. Tr. 1042. Therefore, the ALJ's conclusion that there are not objective findings to support the opinion is based on substantial evidence.

### iii. *The 2015 Opinion*

With respect to the 2015 opinion, the ALJ noted mostly normal range of motion findings on the attached exam, and largely unremarkable presentation by Plaintiff at exams with Dr. Sumners and other providers, in addition to the lack of sufficient rationale. Tr. 536. The range of motion findings attached to the opinion

do indicate some reduction in lumbar extension and flexion and hip abduction. Tr. 1298. The ALJ failed to explain why these findings were insufficient to support Dr. Sumners' report. However, the ALJ is correct that the opinion does not contain an explanation as to the basis for the significant limitations assessed.

As discussed above, the ALJ cited to substantial evidence supporting her conclusion that Dr. Sumners' opinions were inconsistent with the record as a whole showing Plaintiff's largely unremarkable presentation. The ALJ noted extensive records from both Dr. Sumners and other providers that found few, if any, abnormal objective findings. Tr. 536.

The lack of significant objective findings or explanation in support of the extent of the assessed limitations is a specific and legitimate basis for the ALJ to reject these opinions. While Plaintiff encourages an alternative interpretation of the record in support of Dr. Sumners' conclusions, the ALJ's interpretation is rational and supported by substantial evidence. *Burch v. Barnhardt*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### b. ARNP Lori Drews

Plaintiff asserts the ALJ improperly rejected the opinion of ARNP Lori Drews. ECF No. 13 at 20-21.

An ALJ may discount the opinion of an "other source," such as a nurse practitioner, if she provides "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).[5]

---

[5] Plaintiff points out that a recent revision to Social Security regulations now recognizes ARNPs as acceptable medical sources. ECF No. 13 at 21. However, this change only applies to claims filed on or after March 27, 2017. 20 C.F.R. § 416.902(a)(7). The present matter was filed in 2011, and thus is evaluated under the former rules, which treat an ARNP as an "other" source.

Lori Drews, ARNP, completed two mental residual functional capacity assessments regarding Plaintiff's cognitive abilities. Tr. 502-04, 516-18.[6] In the first assessment, completed in 2012, Ms. Drews found Plaintiff to have moderate, marked, or severe limits in nearly every mental functional category. Tr. 502-04. She commented "this client's functional status is unstable and requires medication and psychiatric supervision." Tr. 504. In 2013 Ms. Drews completed a second copy of the same form, this time finding mostly mild and moderate limits, but still finding Plaintiff to have marked limitations in working in coordination with or proximity to others, completing a normal workweek and performing at a consistent pace, interacting appropriately with the public, and traveling in unfamiliar places or using public transportation. Tr. 516-18. She noted, "information is provided based sole [sic] on interactions during appointments and may not be a true representation of her abilities during a sustained period of time." Tr. 518.

The ALJ adopted by reference her 2013 discussion of Ms. Drews' opinions. Tr. 537. There, the ALJ gave very little weight to Ms. Drews' opinions, noting (1) Ms. Drews was not an acceptable source; (2) she did not provide clinical examination findings to support her opinions; and (3) it appeared she relied on Plaintiff's subjective reports. Tr. 636.

A lack of explanation or supporting documentation is a germane reason to disregard an opinion. *Molina*, 674 F.3d at 1111 (ALJ gave a germane reason when they rejected an other source's opinion that "consisted primarily of a standardized, check-the-box form in which she failed to provide supporting reasoning or clinical findings"); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("The regulations give more weight to opinions that are explained than to those that are not."). Ms. Drews included no explanation or clinical findings in support of her

---

[6] In the original decision in 2013, the ALJ mistakenly attributed Dr. Sumner's opinion at 514-15 to Ms. Drews. Tr. 698-99.

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

assessed limitations, other than to note that Plaintiff required medication and psychiatric supervision. Tr. 504. Also noteworthy is the fact that the record does not contain any treatment records from Ms. Drews to serve as a basis for her opinions, despite her statement that the opinion was based on interactions during appointments. Tr. 518. Plaintiff encourages the Court to consider Plaintiff's "long history of mental health treatment and multiple mental health issues" as support for the opinions. ECF No. 13 at 21. However, the ALJ's statement is correct, that the opinions themselves do not contain any supporting exam findings, a fact that treatment records from other sources does not change. Therefore, the ALJ offered a germane reason for giving these opinions very little weight.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision should be affirmed. Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED June 3, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE